[Civ. No. 22504. Second Dist., Div. Three. Oct. 15, 1957.]

Estate of WELBORN ADDISON CORNITIUS, Deceased. NELDA REID CORNITIUS, Appellant, v. WILLIAM C. CORNITIUS, Respondent.

Philip S. Schutz for Appellant.

Obegi & High and Earl J. McDowell for Respondent.

VALLÉE, J.—Appeal from an order denying objections to distribution of an estate and from the decree of distribution. The order denying objections to distribution is not appealable and the appeal therefrom will be dismissed. (Prob. Code, § 1240; *Estate of Hart*, 92 Cal.App.2d 691 [208 P.2d 59].) The propriety of the order will be reviewed on the appeal from the decree of distribution.

On July 27, 1956, the executor of the will of the deceased filed his first account, report, and petition for distribution. It listed as one of the claims filed, "Vernon F. Steen Funeral Director, $636.45" and stated "The claim of Vernon F. Steen Funeral Director was paid by Nelda Reid Cornitius, the surviving spouse of the decedent herein, and was not paid from funds of this estate." The account showed a balance on hand of $25,377.17, consisting of a portion of Lot 650, tract 5822, and the balance due on a secured promissory note. The petition prayed for distribution in accordance with the will to William C. Cornitius and Carolyn C. Frase, son and daughter of the deceased.

Appellant, Nelda Reid Cornitius, widow of the deceased, filed exceptions and objections to distribution. She objected to distribution of the portion of Lot 650 on the ground that under an agreement dated September 17, 1946, between herself and the deceased, she purchased an undivided half interest therein and she is the owner thereof. She alleged that on October 11, 1956, she instituted an action against the estate to quiet title to the half interest and for declaratory relief, and objected to distribution "until the question of title to said property is adjudicated in said action." She further objected to distribution of Lot 650 on the ground the estate did not have a "marketable or transferrable" title thereto.

As an additional ground of objection, appellant alleged "as to the representation that the estate is not liable for the funeral bill because of the fact that your objector paid said

bill; your objector objects to distribution of the sum of $636.45 to anyone else but her in that she was compelled, under force of attachment heretofore made to pay said bill; that she holds a bona fide assignment from the primary creditor that said obligation is an approved claim in said estate and that it is proper that said claim be paid by said estate to the original creditor or their assignee, your objector.''

The court denied the exceptions and objections; decreed that the executor has in his possession the inventoried portion of Lot 650 and the balance due on the note; and distributed the estate to William C. Cornitius and Carolyn C. Frase except that a homestead was set apart to Nelda Reid Cornitius, the widow. Nelda Reid Cornitius appeals.

The appeal is here on a clerk's transcript. The parties appear to agree that the facts alleged in the exceptions and objections with respect to the pendency of the action to quiet title, the payment of the funeral bill by appellant, and the holding by her of an assignment from the undertaker, are true.

It is first contended the court erred in distributing half of the inventoried portion of Lot 650 while the action to quiet title thereto is pending. Appellant argues that to fulfill the decedent's agreement and deliver title to an undivided half interest in Lot 650 to her, the pending action must be determined before distribution may be made, citing section 738 of the Code of Civil Procedure and section 573 of the Probate Code. Respondent counters that section 581 of the Probate Code controls.

Section 738 of the Code of Civil Procedure provides that an action to quiet title may be brought by any person against another who claims an interest in property adverse to him. Section 573 of the Probate Code authorizes an action to quiet title against the representative of the estate. (*Murphy* v. *Clayton*, 113 Cal. 153 [45 P. 267]; *McNeil* v. *Dow*, 89 Cal. App.2d 370, 374-377 [200 P.2d 859]; *Hollyfield* v. *Geibel*, 20 Cal.App.2d 142, 147 [66 P.2d 755].) Section 581 of the Probate Code authorizes actions for the recovery of property belonging to the estate. (*Reed* v. *Hayward*, 23 Cal.2d 336, 340 [144 P.2d 561]; *Mau* v. *McManaman*, 29 Cal.App.2d 631, 634-635 [85 P.2d 209]. Also see *Cartwright* v. *Cartwright*, 96 Cal.App.2d 932 [216 P.2d 545].) Section 581 also authorizes heirs and devisees themselves, or jointly with the representative, to maintain an action for the possession of estate realty against anyone but the representative. (21 Cal.Jur.2d 411, § 1002, 439, § 1039.)

The question is not: has appellant the right to maintain the pending action; it is: did the probate court err in decreeing distribution prior to the determination of that action? The references to section 738 of the Code of Civil Procedure and sections 573 and 581 of the Probate Code and to authorities construing them are beside the point.

█ Probate Code, section 956, reads: "If all of the debts have been paid by the first order for payment, the court must direct the payment of legacies and the distribution of the estate among the persons entitled, as provided in the next chapter; but if there are debts remaining unpaid, or if, for other reasons, the estate is not in a condition to be closed, the administration may continue for such time as may be reasonable."

The requirement of immediate distribution is peremptory and without qualification, and the court cannot delay distribution merely because an equitable claimant of the decedent's property is engaged in an equitable suit to establish his status. (*Estate of Pritchett*, 52 Cal. 94, 96; *In Matter of Estate of Pritchett*, 51 Cal. 568, 569-570; *Estate of Ross*, 180 Cal. 643, 647-648 [182 P. 755]; *Johnson* v. *Superior Court*, 102 Cal.App. 178, 187 [283 P. 331]; *Estate of Morelli*, 102 Cal.App.2d 39, 41-42 [226 P.2d 716].)

In *Estate of Cropper*, 83 Cal.App.2d 105 [187 P.2d 780], Tina Stevens appeared in opposition to a petition for partial distribution. She alleged she had instituted in the superior court an action in which she sought specific performance of an agreement between the decedent and herself by which the decedent agreed to leave a will making her his sole beneficiary. The probate court ruled that the issues raised by the opposition were not within its jurisdiction in the estate matter, and decreed partial distribution. Tina Stevens appealed. On motion of the only heir, this court dismissed the appeal on the ground Tina Stevens was not a party aggrieved, saying (p. 107):

"Upon the death of Francis Malcolm Cropper such property as he then owned passed by the laws of succession to Theodore Malcolm, as his sole heir at law, subject to administration. The right under the agreement which appellant seeks to enforce is to impress a trust upon the whole of this property. The relief which appellant seeks in her independent action is known as 'quasi specific performance' and if she is successful, Theodore Malcolm will be charged as trustee as to any property belonging to appellant which he may have re-

ceived from the estate. So far as the estate proceedings are concerned, appellant's cause of action on the alleged agreement must be deemed one against him alone, and not enforceable in probate against the personal representative of the estate. (*McCabe* v. *Healy*, 138 Cal. 81 [70 P. 1008]; *Lee* v. *Zimmerman*, 75 Cal.App. 617 [243 P. 62]; *Bank of California* v. *Superior Court*, 16 Cal.2d 516 [106 P.2d 879]; *Notten* v. *Mensing*, 3 Cal.2d 469 [45 P.2d 198]; *Rundell* v. *McDonald*, 62 Cal.App. 721 [217 P. 1082].) In an estate proceeding it is the duty of the court to distribute the estate to the persons entitled under the will or by succession, or their grantees. (*Estate of Crooks*, 125 Cal. 459 [58 P. 89]; *Martinovich* v. *Marsicano*, 137 Cal. 354 [70 P. 459].) It is without jurisdiction to determine the rights of parties asserting title, as appellant does, adversely to the estate and to those who take by will or the laws of succession. (*Estate of Harris*, 9 Cal.2d 649, 664 [72 P.2d 873]; *Estate of Rolls*, 193 Cal. 594, 599 [226 P. 608]; *Fuller* v. *Nelle*, 12 Cal.App.2d 576 [55 P.2d 1248]; *Bath* v. *Valdez*, 70 Cal. 350 [11 P. 724].) The rights of appellant are not concluded or affected by the decree of partial distribution. (*Rogers* v. *Schlotterback*, 167 Cal. 35 [138 P. 728]; *Estate of Rowland*, 74 Cal. 523 [16 P. 315, 5 Am.St.Rep. 464].) Upon finding that the condition of the estate was such as to admit of partial distribution, it was the duty of the court to order partial distribution, notwithstanding the claims of appellant under her alleged agreement. (*Estate of Dutard*, 147 Cal. 253 [81 P. 519]; *Johnson* v. *Superior Court*, 102 Cal.App. 178 [283 P. 331].)''

The appeal in *Estate of Dabney*, 37 Cal.2d 672 [234 P.2d 962], was dismissed on the ground objectors to petitions for ratable distribution were not ''persons interested in the estate.'' The objectors had alleged in opposition to ratable distribution that they had instituted an equity suit against, among others, the personal representative of the estate based on their equitable ownership in properties inventoried as assets of the estate. The court stated (p. 676):

''It is established law 'That the probate court has no jurisdiction to determine adverse claims to the properties of an estate in course of administration before it when asserted by a stranger to said estate. . . . [Citations.]' (Citation), or 'to try the question of title to property as between a representative of the estate and strangers to the estate.' [Citations.] Nor is one who is claiming adversely to an estate properties which have been included in the estate bound by the probate court's order of distribution. [Citations.]

"The same general principle—that one over whose claims the probate court has no jurisdiction is not bound by that court's adjudications—has also found expression in cases dealing with rights to estate properties based on asserted contracts by the decedent to make a particular testamentary disposition. . . .

"[P. 681.] We hold that appellants are not 'persons interested in the estate' within the meaning of sections 1010 and 1011 of the Probate Code and that they are not entitled to maintain this appeal. [Citations.]" *Estate of Cropper, supra,* 83 Cal.App.2d 105, was cited and quoted from with approval.

We hold that the court was not precluded from decreeing distribution because of the pendency of the action to quiet title.

It is next contended the court erred in not ordering payment of the claim for funeral expenses to appellant. The decedent in his will provided that his "funeral expenses be properly paid out of the principal of my estate." The claim of Vernon F. Steen, the undertaker, for funeral expenses in the amount of $636.45 was allowed and approved by the executor and by a judge of the superior court. Appellant paid the amount of the claim. In her objections to distribution she says she was compelled to pay it under force of attachment and that she holds an assignment from the undertaker. In her brief she says the estate failed to pay the claim and that the undertaker by court action forced her to pay it, and repeats that she holds a written assignment of the claim from the undertaker. Since respondent does not deny this statement we assume it is a conceded fact. (*Castriotis* v. *Cummins,* 93 Cal.App. 654, 656 [269 P. 1115] ; *H. Moffat Co.* v. *Rosasco,* 119 Cal.App.2d 432, 443 [260 P.2d 126].)

The right to control the disposition of the remains of a deceased person, unless other directions have been given by the decedent, vests in, and the duty of interment and the liability for the reasonable cost of interment of such remains devolves on, the surviving spouse, if one survives. (Health & Saf. Code, § 7100.) There were no other directions as to the right to control the disposition of his remains given by the decedent in the present case. Section 7101 of the Health and Safety Code provides that when a decedent leaves an estate in this state, the reasonable cost of interment and an interment plot shall be paid as a preferred charge against his estate, as provided in the Probate Code. A charge for funeral expenses is not a debt of the decedent, as respondent argues.

It is a debt of the estate. (Prob. Code, §§ 950, 951; *Golden Gate Undertaking Co.* v. *Taylor,* 168 Cal. 94, 99 [141 P. 922, Ann.Cas. 1915D 742, 52 L.R.A.N.S. 1152].)

In *Estate of Hincheon,* 159 Cal. 755 [166 P. 47, 36 L.R.A. N.S. 303], Mary Hurley, a devisee, paid the funeral expenses. When the petition for distribution came on for hearing she petitioned the probate court for payment to her of the amount paid. Her petition was denied. On review it was held (p. 763) :

"The funeral expenses paid by her were expended immediately after Hincheon's death and before she was aware of the terms of his will or of the fact that the cottage was far from completion. In view of paragraph two of the will there can be no doubt that the testator intended that his funeral expenses should be paid out of his estate. Miss Hurley was a relative of Hincheon. It is not questioned by the respondents that money paid for funeral expenses by one not acting officiously, if reasonable considering the estate of the deceased and the circumstances surrounding the death and burial, will be repaid by the estate to the party paying them. (2 Woerner on American Law of Administration, 2d ed., § 357; *France's Estate,* 75 Pa.St. 220.) This is a proper, and, indeed, a necessary rule in view of the fact that the burial must often be provided for before an executor or administrator can be appointed. The money advanced for this purpose by Mary Hurley should, therefore, in justice, be refunded. . . . [P. 764.] Her payment of the same under these circumstances was not voluntary and she should be reimbursed therefor out of the estate." (Also see *Quigley* v. *Nash,* 1 Cal.2d 502 [36 P.2d 112].)

In *Andrade* v. *Azevedo,* 9 Cal.App.2d 495 [50 P.2d 80], one of the heirs paid the funeral expenses and filed a claim therefor. The claim was rejected. Holding the claim should have been allowed, the court stated (p. 498) :

"It is appellant's main contention that the payment of the claims by respondent and her assignor was that of a volunteer, for which reason no recovery can be had.

"It is true that ordinarily a volunteer or stranger cannot claim subrogation against an estate for a debt that he has paid, for, to give rise to such a right the payment must be made by one who is personally interested in the same. Here, however, with reference to the funeral expenses and other items involved, all of the heirs, including defendant, knew of the arrangements for the payment of the same, and that plaintiff and her assignor had promised to pay them for the benefit

of the estate, and they raised no objection to this plan. Moreover, an heir who has an interest in an estate and pays claims of this character against the estate does not act officiously, and is not a 'volunteer' within the rule that a volunteer is not entitled to subrogation. This being so, the estate should repay him. This is a proper and, indeed, a necessary rule in view of the fact that burial must often be provided for before an executor or administrator can be appointed. (*Estate of Hincheon,* 159 Cal. 755 [116 P. 47, 36 L.R.A.N.S. 303].)''

In *Estate of Kemmerrer,* 114 Cal.App.2d 810 [251 P.2d 345, 35 A.L.R.2d 1393], the mother of the deceased paid part of the funeral expenses and filed a claim therefor which was approved and allowed. On the hearing of the executor's petition for instructions with respect to payment of the claim and other matters, the widow filed objections, asserting the payment by the mother was voluntary. Her objections were overruled. On review it was contended the funeral expenses were paid by a volunteer and were not a proper charge against the estate. The court quoted from *Estate of Hincheon, supra,* 159 Cal. 755, from *Golden Gate Undertaking Co.* v. *Taylor,* 168 Cal. 94 [141 P. 922, Ann.Cas. 1915D 742, 52 L.R.A.N.S. 1152], and from *Andrade* v. *Azevedo, supra,* 9 Cal.App.2d 495 [50 P.2d 80], and said (p. 814) :

''Aside from the California cases to which we have heretofore referred, it is noted in American Jurisprudence (vol. 50, p. 610) as follows: 'Devisees have an interest in the property of a decedent and so are generally entitled to the rights of the creditor where they furnish funds to discharge debts or claims against the estate. The same is true of legatees. Thus, a legatee whose legacy has been absorbed in the payment of debts of the testator may have it out of the undivided realty by subrogation. Devisees and legatees discharging mortgages on the estate may be substituted to the mortgagee's rights. An heir paying debts or claims against the estate may be entitled to subrogation. So, a widow will be subrogated to the rights of her husband's creditors against his estate to the extent that she has paid such·indebtedness from her own means.' As heretofore noted, the claimant who paid the expenses of decedent's last illness was the sole beneficiary under his will.

''The funeral expenditures made by the mother appear on their face to be reasonable, and the record presents no basis

for a contrary conclusion. Nor does the record disclose any foundation for a conclusion that the expenses of the last illness were not reasonable and necessarily incurred. The mother, after the surviving spouse or children, is liable for the reasonable cost of interment (Health & Saf. Code, § 7100.) Further, section 7101 of the same code provides that the estate of a decedent in this state shall be charged with the reasonable cost of interment, and a suitable family plot and memorial proportionate to the value of the estate and in keeping with the standard of living adopted by the decedent. By the Probate Code, expenses of the last illness and interment are preferred charges against the estate and have priority over a family allowance. (Prob. Code, § 950.) The clear policy of the law as expressed in the enactments of the Probate and Health and Safety Codes referred to in this opinion is that funeral and last illness expenses shall be borne by the estate of the decedent. Any other policy would penalize those who step forward with financial assistance in the hour of need, and who do so with no hope of personal gain but with the highest of motives, based upon the real philosophy of human relations. The law countenances no such unjust and inequitable policy.''

In *Estate of Dennis*, 110 Cal.App.2d 667 [243 P.2d 579], this court held that reasonable funeral expenses are a proper charge against an estate and that they are given a preferred status. It is said ''It has been held or recognized in nearly all of the cases in which the question has arisen that one paying funeral expenses is entitled to reimbursement therefor from the decedent's estate, unless he acted officiously, as a mere volunteer or meddler.'' (35 A.L.R.2d 1399, 1401.)

There can be no doubt that decedent intended that his funeral expenses should be paid out of his estate. He expressly said so in his will. In paying the claim appellant did not act officiously; she was compelled to do so as a result of an action brought by the undertaker against her. She was not a volunteer or meddler. The estate should repay her. We hold that appellant is entitled to payment of the claim for funeral expenses from the estate.

The appeal from the order denying objections to distribution is dismissed. The decree of distribution is reversed with directions to the superior court sitting in probate to amend said decree in accordance with the views expressed in this opinion. The parties shall bear their own costs on appeal.

Shinn, P. J., and Wood (Parker), J., concurred.